

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THERESA RUEBBLING, Individually and as Heir of VICTORIA RANGEL, Deceased, | § § | No. 08-23-00054-CV |
| Appellant, | § | Appeal from |
| v. | § | 421st Judicial District Court |
| FOREMOST COUNTY MUTUAL INSURANCE COMPANY, | § § | of Caldwell County, Texas |
| Appellee. | § | (TC# 21-O-421) |

**<u>MEMORANDUM OPINION</u>**

Theresa Ruebbling appeals the trial court's summary judgment determination that Foremost County Mutual Insurance Company (Foremost) is entitled to bring an interpleader action in Caldwell County, Texas.[1] Theresa claims that the trial court erred in exercising subject matter jurisdiction, determining venue was proper, and granting summary judgment.[2] We affirm.

---

[1] This case was transferred from the Austin Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of that court to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] Because several parties in this case share a last name, we use their first names for clarity.

## BACKGROUND

On February 19, 2021, Damian Garza was driving his mother Ericka Ruebbling's vehicle in Travis County when he collided with a freightliner. Both Damian and his passenger, Victoria Rangel, died in the accident. Victoria is survived by her mother, Theresa Ruebbling, and her father, Jorge Rangel.

Ericka's vehicle was insured by a Foremost policy that includes $100,000 in bodily injury liability coverage. After the accident, Theresa and Jorge agreed to settle their liability claims against Damian's estate and Ericka in exchange for Foremost's $100,000 policy limit.

Foremost prepared a release of liability (the Release), then sent it to Theresa and Jorge for their signatures. Theresa's attorney, Ronnie Jones, returned a copy of the Release bearing Theresa's signature to Foremost and explained that he was not representing Jorge. Jones asked Foremost to obtain Jorge's signature and issue the insurance proceeds check jointly to Theresa, Jorge, and Jones's law firm.

Foremost obtained Jorge's signature on the Release and notified Jones that Jorge requested separate checks. Jones responded that Theresa would "not allow Jorge to profit from his daughter's death," would "not agree to two separate checks or any split with Jorge under the bodily injury portion of the claim," and would "take him to court for his unconscionable conduct." Taking aim at Foremost, Jones said, "your insurance company does not need to get directly involved in this civil matter between [Theresa] and Jorge. Therefore, I respectfully request that you . . . make the check payable to [Theresa] and Jorge and me . . . ." Jones gave Foremost a deadline within which to tender the check to "avoid unnecessary litigation."

In response, Foremost issued a $100,000 check payable to Theresa, Jorge, and Jones's law firm. A few days later, Jones returned the check, requesting instead that Foremost issue a check

solely payable to Victoria's estate, by and through her mother, Theresa. Shortly thereafter, Jorge retained counsel who notified Foremost that issuing a payment solely to Theresa would result in litigation.

Based on its doubt about how to disburse the settlement proceeds, Foremost filed an interpleader petition in Caldwell County against Theresa and Jorge, noting it was "ready, willing and able" to "unconditionally tender[]" the full $100,000 into the court's registry upon the court's order. Theresa responded by filing a combined answer, plea to the jurisdiction, plea in abatement, motion to transfer venue, and counterclaims. She stated she had previously filed a pending wrongful death lawsuit in Travis County against Damian's estate, Ericka, and Roberto Martinez.[3] Theresa asserted that Foremost lacked standing to bring an interpleader action, and alternatively, that the Travis County court had dominant jurisdiction. Jorge answered, affirming the settlement and the propriety of the interpleader, and asserted a claim for a share of the insurance proceeds.

Foremost moved for summary judgment on its entitlement to interpleader and on Theresa's defenses and counterclaims. The trial court held a hearing on Theresa's combined plea to the jurisdiction, plea in abatement, and motion to transfer, and on Foremost's motion for summary judgment. On February 16, 2022, the trial court rendered summary judgment and entered three separate orders on Theresa's motions. First, it granted Foremost's summary judgment approving its interpleader action. The summary judgment found Foremost was entitled to an allowance against the $100,000 in the amount of $13,354 for attorney's fees, plus $6,600 in fees in the event of an appeal, and it ordered Foremost to deposit $86,646 into the court's registry. Second, in three

---

[3] Martinez owns the freightliner into which Damian collided.

3

individual orders, it denied Theresa's plea to jurisdiction, plea in abatement, and motion to transfer. Theresa contested all four rulings in a motion for new trial, which was denied.

Theresa moved for a new trial, and Foremost asked the trial court to disburse $6,600 for its attorney's fees. The trial court granted Foremost's motion and ordered the clerk to disburse the requested funds. On December 7, 2022, the trial court severed the claims against Foremost, making the February 16 orders final and appealable.[4]

## DISCUSSION

Theresa brings eleven issues on appeal. In her first three issues, Theresa claims the trial court erred in allowing Foremost's interpleader to proceed in Caldwell County, as Foremost did not have standing to bring it; however, if it did, she asserted the venue had to be in Travis County, where she previously filed the wrongful death suit. In her remaining eight issues, Theresa asserts the trial court erred in granting Foremost's motion for summary judgment and request for attorney's fees.

### A. Preliminary evidentiary considerations

We first address an evidentiary point that impacts several issues on appeal. "In reviewing whether a summary judgment was properly granted, we are precluded from considering arguments on appeal that refer to evidence the trial court has excluded, unless the appealing party also challenges the ruling that excluded that evidence." *Brown v. Hensley*, 515 S.W.3d 442, 446 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (collecting cases).

---

[4] Before moving to sever the Foremost claims, Theresa attempted to appeal the trial court's February 16 orders; however, this Court dismissed her appeal for want of jurisdiction because those orders were interlocutory at that point, and no statute permitted such an interlocutory appeal. *Ruebbling v. Foremost Cnty. Mut. Ins. Co.*, 658 S.W.3d 611, 612–13 (Tex. App.—El Paso 2022, no pet.). Theresa also filed a petition for writ of mandamus with the Third Court of Appeals, which was denied. *In re Ruebbling*, No. 03-22-00445-CV, 2022 WL 3006785, at *1 (Tex. App.—Austin July 29, 2022, no pet.) (mem. op.).

In response to Foremost's motion for summary judgment, Theresa objected to its appended evidence and offered seven exhibits of her own, including a copy of the Release and her own affidavit. In reply, Foremost raised extensive objections to Theresa's evidence, excepting only the Release.

The trial court overruled Theresa's objections to Foremost's exhibits and sustained Foremost's objections to Theresa's exhibits. In its summary judgment order, the trial court found that no evidence supported any of Theresa's affirmative defenses or counterclaims. The trial court further found that the summary judgment evidence conclusively established that Jorge and Theresa had settled their liability claims against Foremost's insureds (i.e., Damian's estate and Ericka), and Foremost established the elements of its interpleader action and its entitlement to attorney's fees.

On appeal, Theresa does not challenge the trial court's ruling sustaining Foremost's objections to her summary-judgment evidence. Accordingly, that evidence is not part of the record before us, and we are precluded from considering arguments founded upon the same. *Id.*

### B. Issues related to jurisdiction and venue

#### (1) Standard of review and applicable law

We review a trial court's ruling on a plea to the jurisdiction de novo. *Grossman v. Wolfe*, 578 S.W.3d 250, 255 (Tex. App.—Austin 2019, pet. denied). "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Univ. of Texas Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 379 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). The plaintiff has the burden of affirmatively demonstrating the trial court's jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). A party's standing to bring suit is a component of subject matter jurisdiction. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018).

5

We review a trial court's ruling on a plea in abatement for an abuse of discretion. *Davis v. State*, No. 03-14-00546-CV, 2016 WL 1084177, at *5 (Tex. App.—Austin Mar. 17, 2016, pet. denied) (mem. op.) (citing *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981)). "An abuse of discretion occurs when the court's decision is made without reference to any guiding rules and principles or is arbitrary or unreasonable." *Ermisch v. HSBC Bank USA*, No. 03-16-00080-CV, 2016 WL 6575232, at *2 (Tex. App.—Austin Nov. 4, 2016, pet. denied) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

We review a trial court's ruling on a motion to transfer venue de novo under the general venue rule. *See Union Pac. Ry. Co. v. Stouffer*, 420 S.W.3d 233, 240 (Tex. App.—Dallas 2013, pet. dism'd).

### (2) Analysis

In her first three issues, Theresa claims the trial court erred in denying her plea to the jurisdiction because a Travis County court had dominant jurisdiction, Foremost did not have standing to bring its interpleader action, and venue was mandatory in Travis County and improper in Caldwell County.

Theresa's first and third issues implicate the doctrine of dominant jurisdiction, while her second issue complains of Foremost's standing to bring its interpleader action. The doctrine of dominant jurisdiction is "more of a venue issue than a true jurisdictional one." *See* 1 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 3:13 (2d ed. 2022). Standing, on the other hand, is a component of subject matter jurisdiction, without which a court cannot address the merits of the case. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016). Thus, we first address Theresa's issue regarding standing then turn to her first and third issues regarding dominant jurisdiction.

6

**(a) Foremost established its right to bring an interpleader action.**

Theresa asserts that because Foremost was not a party to the Release, it did not have standing to enforce its terms and conditions through the interpleader action. Foremost responds that contract law does not apply here; instead, Texas Rule of Civil Procedure 43 authorizes it to bring an interpleader action. Foremost is correct.

"Texas has long recognized the equitable remedy of interpleader." *Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.) (citing *Williams v. Wright*, 20 Tex. 499, 500 (1857)). "When insurers receive notice of adverse bona fide claims, Texas law does not require them 'to act as judge and jury,' or to pay one claim and risk liability on the other." *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 806 (Tex. 2007) (footnotes omitted); *Petro Source Partners, Ltd. v. 3-B Rattlesnake Ref. (1990), Ltd.*, 905 S.W.2d 371, 375 (Tex. App.—El Paso 1995, writ denied) (noting that interpleader party "was not required to speculate at its peril as to the ultimate decision in the judicial process"). "Instead, if a reasonable doubt exists in law or fact as to whom the proceeds belong, an insurer should interplead them and let the courts decide." *Martinez*, 216 S.W.3d at 806.

"In an attempt to liberalize the remedy of interpleader and to encourage litigants to seek the protections offered thereby, the Supreme Court promulgated Rule 43 as part of the initial adoption of the Rules of Civil Procedure in 1941." *Sav. & Profit Sharing Fund of Sears Employees v. Stubbs*, 734 S.W.2d 76, 79 (Tex. App.—Austin 1987, no writ). Rule 43 authorizes an interpleader suit to afford disinterested stakeholders a method by which they may proceed when subjected to conflicting claims and thus "exposed to double or multiple liability." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018) (quoting TEX. R. CIV. P. 43). This process relieves the stakeholder from potential liability and litigation costs by placing the disputed

funds in the control of the court upon the court's order for the court to decide ownership. *Clayton*, 284 S.W.3d at 401 (citing *Martinez*, 216 S.W.3d at 806–07).

Interpleader generally involves two stages: in the first stage, the court determines whether interpleader is appropriate and discharges the stakeholder from liability; in the second stage, the rival claimants litigate their positions. *Id.* at 402. A party is entitled to interpleader relief when it establishes that (1) it is subject to or has a reasonable basis to anticipate rival claims to the same funds; (2) it has not unreasonably delayed filing its interpleader action; and (3) it has unconditionally tendered the funds into the court's registry. "[I]nterpleader jurisdiction is determined at the time the interpleader complaint is filed." *Id.* "[E]very reasonable doubt should be resolved in favor of the stakeholder's right to interplead." *Martinez*, 216 S.W.3d at 806 (quoting *Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998)).

In establishing the first element, Foremost showed that the funds in question are the settlement proceeds, i.e., the $100,000 policy limits. The Release called for Foremost to pay these funds to the "Releasing Parties," which it defined as "Theresa Ruebbling and Jorge Rangel, Individually and as Heirs of Victoria Rangel, Deceased" and "all others who may have any claim by, through or under Theresa Ruebbling and Jorge Rangel, Heirs of Victoria Rangel, Deceased." Jones initially requested that the settlement check be made payable to Theresa, Jorge, and Jones's law firm. But after Foremost tendered the check in that fashion, Jones objected to Jorge's name on the check and directed Foremost to make the check payable to the estate by and through Theresa as next of kin, without Jorge listed as a payee. Within days, Jorge's attorney insisted that he be included in the distribution and objected to only Theresa receiving the funds. Both attorneys threatened Foremost with litigation if it did not comply with their instructions. Foremost thus had reasonable grounds to anticipate rival claims to the insurance proceeds. *See, e.g.*, *Clayton*, 284

S.W.3d at 402–03; *Tri-State Pipe and Equip., Inc. v. S. Cnty. Mut. Ins. Co.*, 8 S.W.3d 394, 402 (Tex. App.—Texarkana 1999, no pet.); *Petro Source Partners*, 905 S.W.2d at 376; *Stubbs*, 734 S.W.2d at 77–79.

In establishing the second element, Foremost presented evidence that it did not unreasonably delay in its interpleader petition: Foremost filed it 28 days after receiving Jorge's attorney's objection to having the settlement check made payable solely to Theresa. Whether a delay is "unreasonable . . . depends on the facts of each case." *Martinez*, 216 S.W.3d at 804 (insurers that interplead funds within 30 days are not generally found to have unreasonably delayed interpleading proceeds). *Id.*

In establishing the third element, Foremost stated in both its original and amended petitions that it unconditionally tendered the settlement proceeds to the court and remained ready to deposit the funds into the registry of the court upon order. This type of unconditional tender satisfies the unconditional tender requirement of an interpleader action. *See Heggy v. Am. Trading Emp. Ret. Acct. Plan*, 123 S.W.3d 770, 776 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Theresa attempted to dispute Foremost's right to interpleader with her own affidavit and Ericka's responses to requests for admissions in the Travis County case, both of which were excluded by the trial court, so her argument on this point fails.

Based on the foregoing, Foremost has standing to bring an interpleader action. *See* TEX. R. CIV. P. 166a(c); *Rodriguez*, 547 S.W.3d at 850. We overrule Theresa's second issue.

### (b) Venue is proper in Caldwell County.

In her first and third issues, Theresa challenges the trial court's venue. She claims in her first issue that the trial court erred in denying her plea to the jurisdiction because it refused to follow the "clear mandate and order" regarding dominant jurisdiction found in *In re J.B. Hunt*

*Transport, Inc.*, 492 S.W.3d 287 (Tex. 2016) (orig. proceeding). She claims in her third issue that the trial court erred in denying her motion to transfer venue because dominant jurisdiction trumps the permissive venue provision upon which Foremost relied in filing its interpleader action in Caldwell County.

Following the court's analysis in *J.B. Hunt*, we first ask whether an inherent interrelation between the subject matter of the two pending lawsuits triggers a dominant jurisdiction question. 492 S.W.3d at 292. If that relationship exists, we then ask whether the trial court abused its discretion in denying Theresa's plea in abatement. *Id.*

Generally, a court must grant a plea in abatement in a later-filed suit when "an inherent interrelation of the subject matter exists in two pending lawsuits."[5] *Id.* at 292; *see In re Red Dot Bldg. Sys.*, *Inc.*, 504 S.W.3d 320, 322 (Tex. 2016); *see also Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974) ("Any subsequent suit involving the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea of abatement."). "This first-filed rule flows from 'principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues.'" *J.B. Hunt*, 492 S.W.3d at 294 (quoting *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988), *overruled in part on other grounds by J.B. Hunt*, 492 S.W.3d at 292 (modifying *Wyatt*'s statement of the compulsory-counterclaim rule)). However, if no inherent interrelation exists, both suits may proceed in the respective courts. *See id.*; *Comp-E-Ware Tech. Assocs., Inc. v. Mushkin, Inc.*, 629 S.W.3d 549, 555 (Tex. App.—Fort Worth 2021, pet. denied).

---

[5] There are two exceptions to the general rule—inequitable conduct by the first-filer to delay the second filing, and lack of intent and diligence on the part of the first-filer to prosecute the first suit—neither of which applies here. *See J.B. Hunt*, 492 S.W.3d at 294.

"It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues." *Wyatt*, 760 S.W.2d at 247. "[I]n determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule." *Id.*; *see also J.B. Hunt*, 492 S.W.3d at 294.

Rule 97(a), the compulsory counterclaim rule, provides in part:

> A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction[.] TEX. R. CIV. P. 97(a).

In addition to these requirements, "a counterclaim is compulsory if . . . it was not the subject of a pending action when the original suit was commenced." *J.B. Hunt*, 492 S.W.3d at 293. However, Rule 97(a) does not require anyone who is not already a party to a lawsuit to intervene in the lawsuit and bring forth related claims. *Price v. Couch*, 462 S.W.2d 556, 558 (Tex. 1970).

Dominant jurisdiction may still apply "if the claims in the first filed suit may be amended to bring in all necessary and proper parties and issues." *Comp-E-Ware Tech.*, 629 S.W.3d at 555 (citing *Wyatt*, 760 S.W.2d at 247). "Texas Rule of Civil Procedure 39 governs the joinder of indispensable parties." *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017). "A person must be joined as a party if 'in his absence complete relief cannot be accorded among those already parties.'" *Id.* (quoting TEX. R. CIV. P. 39(a)(1)). "If a necessary party cannot be joined, the court must determine 'whether in equity and good conscience the action should proceed.'" *Id.* (quoting TEX. R. CIV. P. 39(b)).

Theresa argues it is "indisputable" that the two lawsuits are inherently interrelated because they involve the same subject matter. Foremost responds that Theresa failed to address the

11

standards by which an inherent interrelationship is determined, and in any event, she did not provide the trial court with a copy of the wrongful death petition (i.e., the Travis County lawsuit) to compare the parties and issues in each case. It also contends that the two cases involve different parties and issues, and the two cases are not inherently interrelated since Theresa lacks standing to join Foremost as a party in the wrongful death suit. Further, Foremost argues that because Foremost unconditionally tendered the $100,000 policy proceeds to the Caldwell County court, that court retained quasi in rem jurisdiction over those funds, such that the Travis County court could not adjudicate Theresa and Jorge's rival claims to those funds.

The two lawsuits at issue here are not inherently interrelated because Foremost's interpleader action is not a compulsory counterclaim to Theresa's wrongful death claim, and Foremost is not—and cannot be—a party in that suit. Foremost is not a party in the wrongful death action, so Rule 97(a) does not require it to intervene in the Travis County suit and bring its interpleader action there. *See Price*, 462 S.W.2d at 558; TEX. R. CIV. P. 97(a). Further, dominant jurisdiction does not apply because Theresa cannot amend her Travis County suit to add Foremost as a party: "[u]nder Texas law, a tort plaintiff generally has no standing to join a tortfeasor's liability insurer directly in the tort action." *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.) (collecting cases). Thus, Foremost is not a "necessary and proper part[y]" to the wrongful death suit. *Wyatt*, 760 S.W.2d at 247; *see* TEX. R. CIV. P. 39.

We conclude that the Travis County wrongful death suit and the Caldwell County interpleader action were not inherently interrelated. *See Wyatt*, 760 S.W.2d at 247. Dominant jurisdiction is thus not applicable in this case. *See J.B. Hunt*, 492 S.W.3d at 292. The trial court did not abuse its discretion in denying Theresa's motion for abatement based on dominant jurisdiction. We overrule Theresa's first issue.

12

In her third issue, Theresa argues the trial court erred in denying her motion to transfer venue because (1) Caldwell County was not a proper county, and (2) Travis County's dominant jurisdiction meant venue there was mandatory and prescribed over a county selected under a permissive venue statute. But Theresa acknowledges that because Jorge resides in Caldwell County, it is a proper permissive venue choice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(2). She does not offer any argument or authority indicating that Caldwell County is not a permissive venue choice. Because we have already concluded dominant jurisdiction is inapplicable here, venue is proper in Caldwell County. The trial court did not err in denying Theresa's motion to transfer venue to Travis County. We overrule Theresa's third issue.

## C. Foremost's summary judgment motion was properly granted.

### (1) Standard of review

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). A movant seeking traditional summary judgment must state the specific grounds for the motion, show that no genuine issue of material fact exists, and establish that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). If the movant satisfies this burden, the burden shifts to the nonmovant to provide evidence that raises a genuine issue of material fact to avoid summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014).

In a no-evidence motion for summary judgment, the movant must allege that adequate time for discovery has passed, and the respondent has failed to produce any evidence to support one or more essential elements of a claim for which it would bear the burden of proof at trial. TEX. R.

CIV. P. 166a(i). The trial court must grant a no-evidence motion for summary judgment unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* We review for abuse of discretion a trial court's implicit determination that an adequate time for discovery has passed before consideration of a no-evidence motion for summary judgment as well as a trial court's determination to admit or exclude evidence. *McMillan v. Little City Invs., LLC*, No. 03-19-00430-CV, 2020 WL 5884291, at *3 (Tex. App.—Austin 2020, pet. denied) (mem. op.) (adequate time for discovery); *Stone v. Coronado*, No. 03-11-00243-CV, 2012 WL 2076831, at *2 (Tex. App.—Austin June 6, 2012, pet. denied) (mem. op.) (evidentiary rulings).

### (2) Analysis

In her remaining issues, Theresa appeals the trial court's order granting Foremost's motion for summary judgment. In Theresa's fourth, fifth, and eleventh issues, she contests Foremost's traditional summary judgment motion on its right to interpleader and accompanying attorney's fees. In Theresa's sixth through tenth issue, she challenges Foremost's combined traditional and no-evidence motion for summary judgment on her defenses and counterclaims.

### (a) The trial court did not err in granting Foremost's traditional summary judgment motion regarding its right to interpleader and attorney's fees.

Theresa complains the trial court erred in granting Foremost's traditional motion for the following reasons: Foremost did not meet its traditional summary judgment burden on its cause of action; she raised a fact issue on her affirmative defenses; and Foremost was not entitled to attorney's fees.

In her fourth issue, Theresa claims Foremost did not meet its burden under Rule 166a(c) based on evidentiary issues. Specifically, she argues Foremost's summary judgment evidence was hearsay or hearsay within hearsay with no proper foundation laid for its admission. Theresa further

14

contends the attorney's fees statements Foremost submitted were not admissible because Foremost had not pleaded or established a statutory or contractual basis for its attorney's fees claim. Foremost responds that the trial court properly overruled Theresa's evidentiary objections because all of its exhibits were admissible.

Foremost's summary judgment evidence consists of the following:

- Exhibit 1: Jorge's affidavit, attaching a copy of the signed Release;

- Exhibit 2: Declaration of Monique Willis, a Foremost Senior Claims Representative assigned to this claim, with the following attachments:

  - A copy of the signed Release;

  - A series of emails exchanged among Jones, Misty Cunningham (Foremost's assigned attorney to the claim), and Willis between June 21–28, 2021;

  - A series of emails exchanged among Jones, Cunningham, and Willis between June 21–29, 2021;

  - A copy of the June 30, 2021 letter sent to Jones by Willis, along with a copy of Foremost's settlement check enclosed with that letter;

  - A copy of the July 2, 2021 letter sent to Willis by Jones, along with a copy of Foremost's returned settlement check enclosed with that letter; and

  - A copy of the July 6, 2021 letter sent to Willis by Jorge's counsel.

- Exhibit 3: Foremost's certificate of authority to transact business from the Texas Department of Insurance;

- Exhibit 4: Affidavit of Meredythe Heaton, defense counsel for Damian's estate and Ericka in the Travis County wrongful death suit, attaching a copy of Theresa's first amended petition in that suit;

- Exhibit 5: Declaration of Kenneth Chambers, Foremost's counsel in this case, attaching a copy of his time and billing records.

The trial court did not err in overruling Theresa's objections because each of the above exhibits is admissible, either because it contains no hearsay or comes in as an exception to hearsay. TEX. R. EVID. 801 (defining hearsay as "a statement that[] the declarant does not make while

testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted in the statement"); *Id.* 803 (defining exceptions to the rule against hearsay). Exhibits 1, 2, 4, and 5 are properly executed affidavits or unsworn declarations specifically contemplated as proper summary-judgment evidence and contain no hearsay. *See* TEX. R. CIV. P. 166a(c); TEX. CIV. PRAC. & REM. CODE ANN. § 132.001.

The signed Release (attached to both Exhibits 1 and 2) and the related correspondence attached to Exhibit 2 are competent evidence to establish that Foremost reasonably anticipated rival claims to the policy proceeds—i.e., the basis of its interpleader cause of action. *See Guyaux v. Mitchell*, No. 03-20-00585-CV, 2021 WL 5855652, at *6 (Tex. App.—Austin Dec. 10, 2021, no pet.) (concluding documents were not hearsay because their submission constituted a necessary part of the claim and were thus operative facts); *Scott v. Cannon*, 959 S.W.2d 712, 722 n.9 (Tex. App.—Austin 1998, pet. denied) (concluding testimony was not hearsay "where the utterance or writing is an operative fact"). Further, statements by Theresa and Jones are not hearsay, as they are offered by Foremost against Theresa. TEX. R. EVID. 801(e)(2)(A), (C) (statement by an opposing party or someone authorized to speak on their behalf is not hearsay when offered against that party).

Exhibit 3 is admissible as a public record hearsay exception, as Theresa has not attempted to demonstrate that the source of the information or other circumstances indicate a lack of trustworthiness. *Id.* 803(8). The copy of Theresa's petition in the wrongful death suit appended to Exhibit 4 is not hearsay, as it was offered to show only that the parties and the issues in the two cases are different, not for the truth of any matter asserted. *Id.* 801. Finally, Chambers's time and billing records are admissible as hearsay exceptions because they are records of a regularly conducted activity supported by an affidavit. *Id.* 803(6), 902(10).

16

We conclude the trial court did not abuse its discretion in admitting Foremost's summary judgment evidence. Foremost established its right to interplead policy proceeds based on properly admitted evidence. *See* TEX. R. CIV. P. 166a(c); *Rodriguez*, 547 S.W.3d at 850. We overrule Theresa's fourth issue.

In her fifth issue, Theresa contends she presented sufficient evidence to raise a fact issue on her "affirmative defenses," referring to her purported disproval of the three requisite interpleader elements as "affirmative defenses." Disproving elements on which the opposing party has the burden of proof is not the assertion of an affirmative defense but is instead a separate ground on which the movant may be entitled to summary judgment. *E.g.*, *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Because we have already addressed Foremost's establishment of its right to interpleader, we overrule Theresa's fifth issue.

In her eleventh issue, Theresa asserts the trial court erred by granting Foremost's request for attorney's fees. She claims that no statute or contract authorizes attorney's fees in an interpleader action and, assuming attorney's fees are authorized, Foremost has not met the elements a party must establish when claiming attorney's fees. Theresa states Foremost did not (1) properly plead for attorney's fees, (2) comply with the conditions precedent to recover them, (3) establish that it incurred attorney's fees, and (4) establish that the fees were reasonable and necessary.

"The Texas rule is that the innocent stakeholder in an interpleader is entitled to attorney's fees to be paid out of the interpleaded funds." *Rodriguez*, 547 S.W.3d at 850; *see also FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 141 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A disinterested stakeholder who has reasonable doubts as to the party entitled to the funds in its possession and who in good faith interpleads the funds may recover its reasonable

17

attorney's fees." (citing *U.S. v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 580 (Tex. 1964)). In determining whether a party was an "innocent, disinterested stakeholder" in an interpleader action, the Texas Supreme Court has looked to Black's Law Dictionary's definitions of each of those words—"free from legal fault[,]" "not having a pecuniary interest in the matter at hand[,]" and "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Rodriguez*, 547 S.W.3d at 852 (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)).

Foremost presented evidence on the three requirements to recover attorney's fees in an interpleader action. It demonstrated it was a stakeholder in that it held the $100,000 settlement proceeds in which Theresa and Jorge each claimed an interest. Foremost established it was free from fault because it did not fail to perform its obligations under the Release, nor did it "create[] its own predicament." *Union Gas Corp. v. Gisler*, 129 S.W.3d 145, 153 (Tex. App.—Corpus Christi 2003, no pet.); *see also Rodriguez*, 547 S.W.3d at 851. Foremost presented evidence that it promptly negotiated settlement of Theresa and Jorge's wrongful death claims, obtaining an executed Release approximately four months after the collision resulting in Victoria's death, and promptly issued a settlement check under the terms of the Release. *See Martinez*, 216 S.W.3d at 804. Finally, Foremost proved that it was disinterested, as it had no pecuniary interest in the matter, seeking only its attorney's fees and costs. *See Rodriguez*, 547 S.W.3d at 850, 852; *FinServ Cas. Corp.*, 523 S.W.3d at 141.

The record establishes that Foremost requested attorney's fees and presented admissible evidence substantiating its request, which reflects that the fees incurred were reasonable given Theresa's vigorous defense to the interpleader action. Specifically, Foremost's counsel testified he expended 60.7 hours working on this case, which when multiplied by his hourly rate, resulted in a

18

base lodestar figure of $13,354, and he appended a copy of his time and billing records on the case which detail all performed services. That complies with the lodestar method Texas courts use to prove the reasonableness and necessity of attorney's fees.

> [A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. (citations omitted)).

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019).

We conclude the trial court did not err in granting traditional summary judgment on Foremost's entitlement to interpleader and attorney's fees. We overrule Theresa's eleventh issue.

### (b) The trial court did not err in granting Foremost's combined traditional and no-evidence summary judgment motion on Theresa's defenses and counterclaims.

Theresa's remaining issues assert the trial court erred in granting Foremost's combined traditional and no-evidence motion for summary judgment because she had viable counterclaims; she should have been permitted to amend her pleadings; Foremost's affirmative defenses to her counterclaims were not supported by its pleadings; Foremost's motion was not timely filed; and Foremost's motion was conclusory. We address the last two issues first, as they address only the no-evidence portions of Foremost's motion for summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

In her ninth issue, Theresa argues Foremost's no-evidence motion was prematurely filed because she did not have adequate time for discovery, making a no-evidence motion improper under Rule 166a(i). *See* TEX. R. CIV. P. 166a(i).

19

"The pertinent date for determining whether a no-evidence motion is premature is not the date on which the motion was filed but the final date on which the motion was presented to the trial court for ruling." *McMillan*, 2020 WL 5884291, at *3. "When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *see* TEX. R. CIV. P. 166a(i), 251, 252.

Foremost filed suit on August 3, 2021, and Theresa filed her answer on August 13, 2021. The trial court heard Foremost's motion for summary judgment on January 31, 2022, some five-and-a-half months after Theresa answered. Theresa did not file a verified motion for continuance or an affidavit explaining her need for further discovery. As discussed above, the affidavits she filed in support of her response to Foremost's motion were struck by the trial court. On this record, we conclude that the trial court did not abuse its discretion in considering Foremost's no-evidence motion for summary judgment. We overrule Theresa's ninth issue.

In her tenth issue, Theresa contends the trial court erred in granting Foremost's no-evidence motion for summary judgment because the motion is conclusory, as she argues the motion does not challenge specific elements of her counterclaims or defenses.

A no-evidence motion for summary judgment "must state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). "The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." *Id.* at Comment— 1997; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). A no-evidence summary-judgment motion must provide the opposing party with adequate information to oppose the motion,

20

akin to the fair-notice pleading requirements. *Gish*, 286 S.W.3d at 311 (citing *Westchester Fire Ins. Co. v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978)). "Thus, a no-evidence motion that lists each element of the plaintiff's claim and then asserts that the plaintiff has no evidence to support 'one or more' or 'any of' those elements is insufficient to support summary judgment because this language does not clearly identify which elements, whether some or all, are challenged." *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 695–96 (Tex. 2017).

The no-evidence portion of Foremost's combined no-evidence and traditional summary judgment motion is not conclusory because it addresses the elements of Theresa's claims or defenses for which it claims she has no evidence. For example, in moving for no-evidence summary judgment on Theresa's mutual-mistake-of-fact defense, Foremost lists the three elements for that defense, then states that it moves for summary judgment because there is no evidence of each element. Because the no-evidence portion of Foremost's motion clearly identifies which elements of Theresa's claims or defenses it challenges, it is not conclusory. *See id.* We overrule Theresa's tenth issue.

In her sixth issue, Theresa maintains the trial court erred in granting Foremost's motion for summary judgment because she had viable breach-of-contract and declaratory judgment counterclaims. Foremost moved for summary judgment on both traditional and no-evidence grounds, alleging that Theresa had no evidence of some portions of her counterclaims, that it had conclusively negated certain elements, or both.

In her breach of contract counterclaim, Theresa asserted that Foremost breached the Release by (1) neglecting or refusing to perform its contractual obligation to pay her $100,000 as consideration for the Release; and (2) repudiating the performance of its contractual obligation to pay her $100,000 as consideration for the Release. Foremost moved for no-evidence summary

judgment on both points and claimed the evidence conclusively established that the consideration for the Release was $100,000 to be paid to Theresa, Jorge, and all others who claimed by or through them. Foremost claimed the evidence also conclusively established that it promptly issued and delivered a check for $100,000 payable to Theresa, Jorge, and Jones's law firm, as Jones requested, and that Jones received the check.

The evidence before the trial court conclusively established the opposite of Theresa's breach claims: the Release did not require that Foremost pay $100,000 to Theresa alone, and it did proffer those funds to Theresa, Jorge, and Jones, as Jones requested. Specifically, the Release states:

> The Releasing Parties acknowledge[] that this Full & Final Release of Bodily Injury Liability Wrongful Death Claim & Compromise Settlement Agreement is supported by good and valuable consideration, the receipt of which is acknowledged by the Releasing Parties. Specifically, the Releasing Parties acknowledge[] receipt of good and valuable consideration in the sum of $100,000.00 (One Hundred Thousand Dollars and 00/100) paid to the Releasing Parties in hand by Foremost County Mutual Insurance Company.[6]

Foremost tendered a $100,000 check to Theresa, Jorge, and Jones, and it appended a copy of that check and its accompanying correspondence to its motion for summary judgment. Although Theresa cites her own affidavit as supporting her contentions against these points, the trial court struck that evidence. Thus, Foremost conclusively disproved Theresa's breach of contract counterclaim.

In her declaratory judgment counterclaim, Theresa sought several declarations, including that the Release is not an enforceable contract but, in the alternative, Foremost breached the Release and failed to timely pay settlement proceeds as required by the Prompt Payment Act, Chapter 542, subchapter B, of the Insurance Code. *See* TEX. INS. CODE ANN. §§ 542.051–.061.

---

[6] Capitalization and formatting omitted.

Foremost moved for traditional and no-evidence summary judgment on her declaratory judgment claims, asserting, among other things, that the Release is an enforceable contract, Foremost did not breach the Release, and the Prompt Payment Act does not apply in this case because Theresa has a third-party—not a first-party—claim against Foremost.

Theresa was not entitled to declaratory judgment on her first contention: that the Release is not an enforceable contract. The existence of a valid contract requires an offer, acceptance, mutual assent, consent to terms, and execution and delivery of the contract with the intent that it be mutual and binding. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). "Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). The record contains a copy of the Release, which is signed by Theresa and outlines the consideration for the settlement of claims as described above. The Release is an enforceable contract.

Theresa's remaining declaratory judgment claim regarding the Release essentially restates her breach of contract counterclaim: she sought a declaration that Foremost did not perform under the Release; that Foremost breached the Release; and that Foremost's breach caused her injury. But as discussed above, Foremost conclusively established that it tendered the settlement proceeds; thus, it did not breach the Release. Theresa was not entitled to her requested declaratory judgment on her rights under the Release.

Theresa's desired declarations regarding the Insurance Code all pertain to the alleged untimely payment of the settlement proceeds under the Prompt Payment Act. The Prompt Payment Act governs the timeframe within which an insurer must pay certain claims. TEX. INS. CODE ANN. § 542.057. The Act applies only to a first-party claim—that is, a claim made by an insured,

policyholder, or named beneficiary and paid by the insurer directly to the insured or beneficiary. *Id.* § 542.051. "A first-party claim is one in which an insured seeks recovery for the insured's own loss." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 53 n.2 (Tex. 1997).

However, the subject of the interpleader is the $100,000 settlement of Theresa and Jorge's third-party liability claims against Foremost's insured (i.e., Ericka). The parties to the Release agreed that the policy has a $100,000 bodily injury liability coverage limit and the Release did not include any potential claims for uninsured/underinsured motorist coverage or personal injury protection coverage—meaning any potential first-party claims were expressly omitted from the settlement. Foremost established that the Prompt Payment Act does not apply here. We overrule Theresa's sixth issue.[7]

In her seventh issue, Theresa claims Foremost's no-evidence motion was an improper attempt to use summary judgment to attack defects in her pleadings. She claims her pleadings should have first been challenged by special exceptions, and she should have been given the opportunity to amend them.

The caselaw Theresa cites in support of her argument is inapposite. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 54–55 (Tex. 2003). *Sibley* involved the substitution of a business's legal name for its assumed name under Texas Rule of Civil Procedure 28. *Id.* at 48. In discussing the attempted name change, the Court noted that the business's use of supplemental pleadings to substitute its correct legal name was improper but "was a defect in form," not substance. *Id.* at 54. Thus, the Court opined that "because the pleading defect could have been cured by amendment, it would have been improper for the trial court to grant summary judgment

---

[7] In her eighth issue, Theresa claims the trial court erred in granting Foremost's motion for summary judgment because its affirmative defenses to her counterclaims were not supported by its pleadings. Because we conclude the trial court did not err in granting summary judgment against Theresa's counterclaims, we need not reach this issue.

without first sustaining a special exception and permitting [the business] an opportunity to cure the defect." *Id.* at 54–55.

Here, Theresa's pleadings have substantive defects, as discussed above, that are more than mere "defect[s] in form." *Sibley* is accordingly inapplicable to this issue. Further, Theresa has not proposed any amendment, nor does she allege what defects amendment would cure. Thus, she has waived any error on this issue. *See* TEX. R. APP. P. 38.1(i). We overrule Theresa's seventh issue.

Having disposed of each of Theresa's summary judgment issues, we conclude the trial court did not err in granting Foremost's summary judgment in its entirety.

## CONCLUSION

We affirm the judgment of the trial court.


LISA J. SOTO, Justice

January 29, 2024

Before Palafox, and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment
Palafox, J., dissenting